287 So.2d 464 (1973)
STATE of Louisiana
v.
SHREVEPORT NEWS AGENCY, INC.
No. 53985.
Supreme Court of Louisiana.
December 3, 1973.
Rehearing Denied January 11, 1974.
*465 Robert J. Donovan, Jr., Naff, Kennedy, Goodman, Donovan & Parnell, Shreveport, for defendant-relator.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Asst. Atty. Gen., John A. Richardson, Dist. Atty., Charles R. Lindsay, Asst. Dist. Atty., for plaintiff-respondent.
BARHAM, Justice.
The State filed 20 bills of information, each charging the defendant with a violation of the Louisiana obscenity statute, R. S. 14:106A(2) and (3). The State had seized twenty magazines and the seizure of each magazine constitutes the offense in the twenty separate bills of information. The defendant filed a motion to quash and a supplemental motion to quash, alleging in part that the bills of information were filed under statutory provisions which are unconstitutional and which deprive defendant of its constitutional rights under the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.' Defendant alleges that the statute is so vague and indefinite that it must fall since it does not give notice of the criminal activity intended to be proscribed. The defendant further contends that recent decisions of the United States Supreme Court have made the statute unconstitutional on its face for lack of specificity.
The defendant here is charged in each bill of information with violating R.S. 14:106A(3) by intentionally possessing, with intent to sell, exhibit, give, and advertise, a magazine which is obscene as defined by R.S. 14:106A(2). R.S. 14:106A (2) and (3) reads as follows:
"Obscenity is the intentional:
* * * * * *
(2) Production, sale, exhibition, gift, or advertisement with the intent to primarily appeal to the prurient interest of the average person, of any lewd, lascivious, filthy or sexually indecent written composition, printed composition, book, magazine, pamphlet, newspaper * * *.[1]
(3) Possession with the intent to sell, exhibit, give or advertise any of the pornographic material of the character as described in Paragraph (2) above, with the intent to primarily appeal to the prurient interest of the average person."
In 1957 in Roth v. United States, 354 U. S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, the United States Supreme Court held that obscenity is not within the area of constitutionally protected speech or press. Additionally, although Roth dealt with obscenity in the abstract, certain safeguards or standards were required of local statutes for the judging of obscenity in order that the statutory regulation not impinge upon First Amendment rights.
First, the Court differentiated between sex and obscenity and declared that sexual material which could be declared obscene was material whose dominant theme taken as a whole appeals to prurient interests. Roth further discarded the concept of the impact of the material upon particularly susceptible persons and looked rather to the effect of the material upon the average *466 person applying contemporary community standards.
The Louisiana Legislature, apparently reacting to the Roth decision, amended R. S. 14:106(2) to read as above quoted, in 1960. In State v. Roufa, 241 La. 474, 129 So.2d 743 (1961) this Court held the particular section of the statute we consider to be constitutional, relying upon Roth v. United States. In Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964), the court transformed Roth's statement that obscenity is "utterly without redeeming social importance" into a third safeguard. The court stated:
"Nor may the constitutional status of the material be made to turn on a `weighing' of its social importance against its prurient appeal, for a work cannot be proscribed unless it is `utterly' without social importance." (Emphasis here and elsewhere supplied).
See also Kingsley International Pictures Corporation v. Regents, 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512 (1959).
Nine years after Roth, the Supreme Court reiterated the third safeguard for testing the constitutionality of a local statute regulating obscenity in A Book Named: "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), (hereinafter referred to as "Memoirs"). There the court below had held under the "social importance test" of Jacobellis that the material which appeals to prurient interests and is patently offensive need not be "unqualifiedly worthless before it can be deemed obscene". In Memoirs, the Supreme Court stated, "* * * A book cannot be proscribed unless it is found to be `utterly' without redeeming social value. This is so even though the book is found to possess the requisite prurient appeal and to be patently offensive."
In State v. Henry, 250 La. 682, 198 So. 2d 889 (1967),[2] our Court considered the constitutionality of R.S. 14:106(2) again. The Court noted that the legislature had adopted the two safeguards required under the Roth decision. It did not meet the question of whether or not the statute met the third standard required under Jacobellis and Memoirs. However, the court did cite the companion cases to Memoirs, Ginzburg v. United States, 383 U.S. 463, 86 S. Ct. 942, 16 L.Ed.2d 31 (1966), and Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966), but for the holding that obscenity can be restricted and controlled without violating the First Amendment.
In State v. Gay Times, Inc., 274 So.2d 162 (La.1973), the majority of this Court stated, in light of Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L. Ed.2d 515 (1967), and the varying views of the several Justices of the United States Supreme Court in other opinions: "* * * Consequently, there is no easily ascertainable standard by which we may judge the constitutionality of the Louisiana obscenity statute as applied to moving picture film." The Court then held: "Under the Roth standards, we find the second section of R.S. 14:106 to be violative of neither the First and Fourteenth Amendments to the United States Constitution nor Art. I, § 10 of the Louisiana Constitution of 1921."
At the time of the trial court's rulings on this defendant's motions it could be stated unequivocally that Louisiana's highest court had interpreted and applied the obscenity statute to prohibit the sale of all "lewd, lascivious, filthy and sexually indecent" expression within the ambit of the *467 Roth safeguards. A perusal of the evolution of the obscenity statute makes it clear that our legislature intended to prohibit the display and distribution of all "lewd, lascivious, filthy or sexually indecent" matter or materials which could constitutionally be prohibited. When the trial court ruled upon the defendant's motions to quash on the grounds of unconstitutionality, it was correct under the interpretation and application of that statute by the highest court of this state. However, the United States Supreme Court handed down five cases concerning obscenity statutes during its last term. We must decide the constitutionality of our statute under the latest pronouncement by the United States Supreme Court. The principle case which affects our decision is Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).[3]
Before the Miller decision, material which was "lewd, lascivious, filthy or sexually indecent" was obscenity and without First Amendment protection, if it were established that:
(A) The dominant theme of the material taken as a whole appealed to the prurient interest in sex;
(B) The material was patently offensive because it offended contemporary community standards relating to the description or representation of sexual matters;
(C) The material was utterly without redeeming social value.
Miller v. California reviewed a California statute which had been interpreted under the Memoirs test in the very same light as the criteria above enumerated. Chief Justice Burger, writing for the majority, stated that the case they reviewed was tried in the lower court on the theory that the statute incorporated the threepronged Memoirs test. He wrote:
"* * * But now the `Memoirs' test has been abandoned as unworkable by its author and no member of the Court today supports the `Memoirs' formulation."
The United States Supreme Court repudiated the Memoirs test which had been incorporated in part into our law by statute and to some extent by court interpretation. In repudiating the Memoirs test, the court stated that one part of the test:
"* * * called on the prosecution to prove a negative, i.e., that the material was `utterly without redeeming social value'a burden virtually impossible to discharge under our criminal standards of proof."
The majority further found that the Roth and Memoirs test had never been approved by a majority of the court. As the United States Supreme Court in Miller laid down new tests for determining obscene material which could statutorily be controlled, it said:
"* * *
"We acknowledge, however, the inherent dangers of undertaking to regulate any form of expression. State statutes designed to regulate obscene materials must be carefully limited. See Interstate Circuit, Inc. v. Dallas, supra, 390 U.S. 676, at 682-685, 88 S.Ct. 1298, 20 L.Ed. 2d 225 (1968). As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed."

*468 The court then laid down the constitutional test for local control of obscenity by statute. It said:
"The basic guidelines for the trier of fact must be: (a) whether `the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest * * *, (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value."
The court said further:
"If a state law that regulates obscene material is thus limited, as written or construed * * *.
"We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts."

"* * *
"Under the holdings announced today, no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive `hard-core' sexual conduct specifically defined by the regulating state law, as written or construed. We are satisfied that these specific prerequisites will provide fair notice to a dealer in such materials that his public and commercial activities may bring prosecution."
The above is an accurate summary of the totality of the guidelines laid down in Miller v. California for testing the constitutionality of a statute. The court additionally gave to the state legislatures examples of what activity or matter could be declared obscene, if done so with specificity.
The remainder of the opinion deals with the test of "community standards" which has no application to the issue before us.
Thus, is must be obvious, even to laymen and surely to this Court, that R.S. 14:106(2) does not meet the guidelines and standards set forth by the United States Supreme Court in Miller v. California.
We are urged by the State, however, to take the two examples, which the Miller majority opinion suggests state legislatures might define for regulation of certain obscene materials, and to make them the obscenity statute for Louisiana. This urging comes because of a statement in Footnote 6 of the Miller opinion:
"* * * Other existing state statutes, as construed heretofore or hereafter, may well be adequate."
But the body of the opinion, where the examples are given, states emphatically that it is not a function of that court, and certainly we hold that it is not a function of our Court, to propose new regulatory schemes. The court stated:

"We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation under the second part (b) of the standard announced in this opinion, supra:
(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.
(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."
In United States v. 12 200 Ft. Reels of Super 8mm. Film et al.,413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973), the Chief Justice, who authored all five of the opinions, stated in Footnote 7, in pure obiter dictum, that the Supreme Court was prepared to construe "obscene", *469 "lewd", "lascivious", "filthy", "indecent", or "immoral", for the purpose of reviewing the constitutionality of the federal statutes, 19 U.S.C. § 1305 (a) and 18 U.S.C. § 1462, as being limited to "specifichard-core" sexual conduct given as examples in Miller v. California. We are bound by the holdings of the United States Supreme Court. We are not bound by the passing remarks of the authors of the opinions from that court. We are not of the opinion that we are endowed with the constitutional authority to re-draft Louisiana's obscenity statute. Our Court may interpret a statute, but it cannot re-write a statute in order to hold it constitutional. The Louisiana Legislature intended to regulate all material which could constitutionally be declared obscene. Certainly, the legislature intended to prohibit more than the two examples given in the Miller opinion.
Our Court has, in a long line of cases, held that we must strictly consider all criminal and penal statutes as stricti juris, resolving ambiguities in favor of the accused. State v. Christine, 239 La. 259, and cases cited therein at page 290, 118 So.2d 403, 414 (1960). The Court said there that our courts have "* * * consistently refused to usurp the prerogatives of the legislature by supplying either the definition or essential elements thereof that have been omitted in the drafting of the statute * * *."
Recently, in State v. Brown, 282 So.2d 707 (La.1973), Mr. Justice Marcus, writing for the majority, cited State v. Ganch, 263 La. 251, 268 So.2d 214 (1972), and State v. Adams, 263 La. 286, 268 So.2d 228 (1972), per curiam opinions of this Court which had declared unconstitutional R.S. 14:103A(7) and R.S. 14:103A(2). Mr. Justice Marcus therein declared R.S. 14:103B(2) (e) unconstitutional and quoted approvingly from the per curiam in Ganch and from a recent opinion of the United States Supreme Court:
"The statute on its face is susceptible of application to expression protected by the Louisiana Constitution (Art. 1, Sec. 3) and the First Amendment of the U.S. Constitution. Since we have not heretofore limited the statute in application to expression which is not constitutionally protected, it must fall as being overly broad and in contravention of the Louisiana and United States Constitutions.

"The United States Supreme Court in Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), stated:
"The constitutional guarantees of freedom of speech forbid the States to punish the use of words or language not within `narrowly limited classes of speech.' Chaplinsky v. New Hampshire, 315 U.S. 568, 571, 62 S.Ct. 766, 769, 86 L.Ed. 1031, 1035 (1942). * * * In other words, the statute must be carefully drawn or be authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression. * * *"
The United States Supreme Court in Miller v. California has made R.S. 14:106(2) unconstitutional. It has required the state to draft a statute with specificity because "* * * these specific prerequisites will provide fair notice to a dealer in such materials that his public and commercial activities may bring prosecution * * *." Our statute is totally lacking in specificity which would comply with the requirements of Miller v. California. Mr. Justice Dixon, who wrote the majority opinion in State v. Gay Times, Inc., supra,[4] joins with the rest of the majority here in the opinion that we are now required, under Miller, to overrule the holding in that opinion. We reject any theory that we *470 can authoritatively construe our criminal statute regulating obscenity so as to make it constitutional under the United States Supreme Court holding in Miller v. California. It is for the legislature to design a statute or statutes which meet the tests and formulations set forth by that court.
In summary, we conclude that R.S. 14:106(2), as considered and interpreted in light of Miller v. California, is over-broad, too general, and without the required specificity to withstand the constitutional attack under the United States Constitution, First and Fourteenth Amendments, and our Constitution Article 1, Sections 2 and 3. We conclude that while the United States Supreme Court has given examples of what it believes may be controlled as obscenity without violating the First Amendment right of free speech, it would be an unconstitutional usurpation of the legislative function for us to engraft these limiting two examples into a broad, general statute which clearly conveys the obvious legislative intention to prohibit many other "offensive representations or descriptions".
The United States Supreme Court pronouncement in Miller v. California has made our statute unconstitutional. It is the legislative function to cure the defects in the statute in the manner and to the extent which they believe the people of this state desire within the constitutional limits now newly pronounced by the United States Supreme Court.
Pursuant to the clear pronouncement by the United States Supreme Court, we declare R.S. 14:106A(2) and (3) to be unconstitutional. The trial court judgment is reversed. The motions to quash are sustained. The defendant is ordered discharged.
SANDERS, C.J., dissents with written reasons.
SUMMERS, J., dissents and assigns reasons.
MARCUS, J., dissents with written reasons.
CALOGERO, J., additionally assigns concurring reasons.
TATE, Justice (concurring).
The majority opinion needs no defense. Nevertheless, the intemperate pronouncements in at least one of the dissenting opinions oblige me to note that oversimplification of a complex legal issue and an appeal to emotion do not serve the interests of the legal order, the judicial process, or true respect for law and order.
The issue before us arises because of the decisions of the United States Supreme Court in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) and a series of related decisions. One of these annulled a previous decision of this court which had upheld a determination that a motion picture was obscene and enjoined its exhibition. Gulf States Theaters of Louisiana v. Louisiana, 413 U.S. 913, 93 S.Ct. 3063, 37 L.Ed.2d 1041 (1973). There, the high court of the nation remanded the case and ordered us to reconsider our previous determination in the light of Miller and other decisions cited.
Ten months ago we had previously authoritatively construed our obscenity statute as constitutional under pre-Miller standards. State v. Gay Times, Inc., 274 So.2d 162 (La.1973). There, we had authoritatively construed our obscenity statute in the light of pre-Miller standards and had upheld it as constitutional. I signed this opinion, as did others in the majority, and I still think it was correctly decided under pre-Miller standards. The standard in question involved the exhibition "with intent to primarily appeal to the prurient interest of the average person". La.R.S. 14:106(2).
No argument is made that this statutory test satisfies the requirements of Miller. As there set forth, the permissible scope of *471 regulation must include sexual conduct "specifically described by the applicable state law, as written or authoritatively construed". 413 U.S. 25, 93 S.Ct. 2615. The state itself concedes that the general language of our obscenity statute does not meet this standard, but urges us to reconstrue it ex post facto so as now to meet the Miller standards.
It is suggested, for instance, that we construe the general terms to accord with the suggested example of what a statute could define for regulation so as to meet the Miller test of constitutionality, 413 U. S. 25, 93 S.Ct. 2615:
"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.
"(b) Patently offensive representation or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."
Our authoritative interpretation of our statute in Gay Times does not meet this standard. This interpretation was in effect at the time the offending conduct occurred. To re-interpret the statute so as to make it constitutional under the new Miller standards is not the easy answer it seems.
In the first place, to attempt to punish criminally pre-Miller conduct by a new post-Miller "authoritative interpretation", a new law so to speak, raises serious ex post facto questions of due process. See, e.g., James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961).
In the second place, the judicial amendment of a legislative statute so as to specifically describe conduct criminally penalized seems to me to raise serious questions of true judicial legislation. As another concurring opinion suggests, why this standard of conduct and not instead the terms of the Oregon or Hawaii statutes or the City of New Orleans ordinance?
Formulating a criminal prohibition of substantive conduct appears to me far more legislative than the judicial revision of judge-made rules regulating introduction of evidence, instruction of the jury, argument to the jury, the continuing adjustment of the sort of quasi-procedural rules that for centuries has been regarded an appropriate function of the courts (but which some of the dissenting brethren have suggested on other occasions is judicial legislation).
Rather than re-interpret our obscenity statute so as in effect to amend it, rather than give it a prospective interpretation so as to regulate future conduct (but exempt pre-Miller conduct), the majority has, it appears to me, adopted the most sensible approach to solution of the shambles of our obscenity laws wrought by the new Miller standards: We have left the specific definition and regulation of obscenity to the legislature.
CALOGERO, Justice (concurring).
In an opinion handed down on February 19, 1973, I joined with a majority of this court in holding Louisiana's obscenity statute constitutional under the then current United States Supreme Court standards. State v. Gay Times, Inc., 274 So.2d 162 (La.1973).
Thereafter, on June 21, 1973, the United States Supreme Court handed down Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) and four allied cases, announcing new and different standards, one of which was that proscribed conduct otherwise obscene must be specifically defined by applicable state law.
Our statute is clearly not specific in describing prohibited conduct. As written, therefore, it violates the First Amendment of the United States Constitution according to Miller. This, counsel for the State concedes.
Miller, however, in requiring specificity, apparently sanctions it, either as written or *472 as "construed" by the highest courts of the respective states. Therefore the State here asks us to construe Louisiana's non-specific, vague statute as prohibiting certain specified conduct.
But what, or which conduct? The State would argue that we have several options. There are two examples of such specifically described conduct in the Miller decision itself. That would suffice. Or why not the obscenity statute adopted by the State of Hawaii, or the State of Oregon? They each have a good one. Well, for that matter, why not engraft onto Louisiana's obscenity statute the specific conduct outlined in the obscenity ordinance of the City of New Orleans. After all, it was passed by the New Orleans City Council after, and in response to Miller, and being a studied effort on their part may well comply with the United States Constitutional standards outlined in Miller.
And what about the defendant before us? If we were now to write an obscenity law, should we then permit prosecution for conduct which took place before this Court determined what specific conduct violates the law?
The answer to the latter question should be obvious. We needn't answer it however, for we have properly concluded in our opinion that it is not this Court's province to write an obscenity law for the State of Louisiana, but rather the State Legislature's.
For these reasons I have joined the majority in this case and fully subscribe to that opinion.
SANDERS, Chief Justice (dissenting).
In February of this year, we held that LSA-R.S.14:106, the Louisiana obscenity statute, was constitutional. State v. Gay Times, Inc., La., 274 So.2d 162 (1973). Today, nine months later, the majority wipes the statute from the books. Thus, the state is left with no statute to protect either the young or the old from filth that may be thrust upon them. I record my dissent.
The majority bases its action on the recent decision of the United States Supreme Court in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). The thrust of the Miller decision, however, is toward making state laws more effective against obscenity, not in destroying them. The Supreme Court makes this quite clear. The Court states:
"As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." [413 U.S. 25, 93 S.Ct. 2614, 2615; italics ours]
Again, it states:
"We do not hold, as Mr. Justice Brennan intimates, that all States other than Oregon must now enact new obscenity statutes. Other existing state statutes, as construed heretofore or hereafter, may well be adequate. See United States v. 12 200-Ft. Reels Film, 413 U.S. 123, (p. 130, n. 7), 93 S.Ct. 2665, p. 2670, n. 7, 37 L.Ed.2d 507 (1973)." (413 U.S. 24, 93 S.Ct. 2615 at f.n.6).
In the companion case of United States v. 12 200-ft. Reels of Super 88 MM Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed. 2d 507 (1973), the United States Supreme Court reemphasizes this point in reference to the federal obscenity statute:
"We further note that, while we must leave to state courts the construction of state legislation, we do have a duty to authoritatively construe federal statutes where `a serious doubt of constitutionality *473 is raised . . .' and `a construction of the statute is fairly possible by which the question may be avoided.' United States v. Thirty-Seven Photographs, 402 U.S. 363, 369, 91 S.Ct. 1400, 1404, 28 L.Ed.2d 822 (1971) (opinion of White, J.), quoting from Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932). If and when such a `serious doubt' is raised as to the vagueness of the words `obscene,' `lewd,' `lascivious,' `filthy,' `indecent,' or `immoral' as used to describe regulated material in 19 U.S.C. § 1305(a) and 18 U.S.C. § 1462, see United States v. Orito, supra, 413 U.S. 139, at p. 140, 93 S.Ct. 2674, at p. 2676, 37 L.Ed.2d 513 (1973), we are prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific `hard-core' sexual conduct given as examples in Miller v. California, supra, 413 U.S. 15, at p. 27, 93 S.Ct., at pp. 2615-2616 (1973). See United States v. Thirty-Seven Photographs, supra, 402 U.S., at 369-374, 91 S.Ct., at 1404-1407 (1971) (opinion of White, J.). Of course Congress could always define other specific `hardcore' conduct. [413 U.S. 130, 93 S.Ct. 2670 at f.n. 7]."
This, from the express language of the United States Supreme Court, it is clear that our statute is not unconstitutional on its face. The Miller decision means only that, in interpreting and enforcing our statute, we must apply the new standards, in some respects less exacting than those previously existing. See Wainwright v. Stone & Huffman, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973).
The adoption of federal constitutional standards in the interpretation and enforcement of state statutes is an accepted judicial practice. See, e.g., State v. Eros Cinema, Inc., 262 La. 706, 264 So.2d 615 (1972); Levy v. State, Char. Hosp. of La., N. Orleans Bd. of Ad., 253 La. 73, 216 So.2d 818 (1968); State v. Rasheed, 248 La. 309, 178 So.2d 261, cert. den. 384 U.S. 1012, 86 S. Ct. 1962. 16 L.Ed.2d 1031 (1965); State v. Davidson, 248 La. 161, 177 So.2d 273 (1965); State v. Rideau, 246 La. 451, 165 So.2d 282 (1964).
The principle is correctly set forth in 16 Am.Jur.2d, Constitutional Law, § 144, p. 345 as follows:
"In construing statutes with relation to constitutional provisions, the courts take into consideration the principle that every statute is to be read in the light of the Constitution, and that the Constitution and a statute involving constitutional rights will be construed together as one law. . . .
"The rule has developed that the courts, in applying rules of statutory construction to legislation which is under constitutional attack, must do so with a view to bringing the legislation into line with constitutional requirements."
If our obscenity statute was constitutional under the harsh standards of Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), it is difficult to understand why it is not constitutional under less stringent standards. I would uphold the statute.
For the reasons assigned, I respectfully dissent.
SUMMERS, Justice (dissenting).
Less than ten months ago, in State v. Gay Times, Inc., 274 So.2d 162 (La.1973), by a clear majority, this Court upheld the constitutionality of Article 106 of the Criminal Code, Louisiana's obscenity law. At that time, under standards then prevailing and established by the United States Supreme Court in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), we found Article 106 to be violative of no constitutional standard, federal or state. Article 106 had been drawn to specifically incorporate the standards announced *474 in the Roth Case.[1] There we declared that the statute "has reprobated material whose dominent theme appeals to the prurient interest in sex." Our decision pointed out that the constitutionality of Louisiana's obscenity law had twice been sustained against charges that its language was too vague and indefinite in State v. Henry, 250 La. 682, 198 So.2d 889 (1967), and State v. Roufa, 241 La. 474, 129 So.2d 743 (1961). In State v. Gay Times, Inc., we found the material involved "offensive by any standard." The material involved in the case at bar is of the same character.
The significance of the Roth decision was the Court's reaffirmance of the proposition that obscene materials were not protected by the First Amendment. Five Justices joined in the opinion stating: "[I]mplicit in the history of the First Amendment is the rejection of obscenity as utterly without redeeming social importance This is the same judgment expressed by this Court in Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 . . ."
The rationale of those decisions is that certain well-defined and narrowly limited classes of speech, including the lewd and obscene, have never been thought to raise any constitutional problem. Such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. The Constitution gives no one the right to scandalize or otherwise shock the public. State v. Van Wye, 136 Mo. 227, 37 S.W. 938 (1896); State v. McKee, 73 Conn. 18, 46 A. 409 (1900).
The material involved in the instant case cannot meet any standard of decency or morality. It is vile, filthy, perverted and degenerating. Truly, this material is designed to debauch the public morals.
In the meantime on June 21, 1973 the United States Supreme Court decided Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, one of a number of "obscenity-pornography" cases under review in a reexamination of standards in earlier cases involving "the intractable obscenity problem." The Court in Miller again reaffirmed the proposition that obscene material is not protected by the First Amendment and that the States have a legitimate interest in regulating commerce in obscene material and its exhibition. Specifically the Court approved regulation by state statutes of patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated and patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibitions of the genitals. All of the books involved in the instant case fall within the categories approved for regulation.
The Miller Court then decided that the proper First Amendment standards to be applied by the states in determining whether particular material was obscene and subject to regulation, were (a) whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appealed to prurient *475 interests, (b) whether the work depicted or described, in a patently offensive way, sexual conduct specifically defined by the applicable state law, as written or authoritatively construed, and (c) whether the work, taken as a whole, lacked serious literary, artistic, political, or scientific value. Thus the Miller Case did away with the requirement that the material be "utterly without redeeming social value" which had been imposed by Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1964). In addition, the community standard was defined, as the word implies, to mean the community where the offense occurred. The notion that a national standard be applied to all states was rejected. In effect, therefore, the Miller Case did not impose more stringent requirements for State obscenity statutes to meet constitutional tests. To the contrary, the tests have been relaxed by that decision, giving more liberality to the states to uphold their obscenity statutes.
Soon after the decision in Miller, on November 5, 1973, in Wainwright v. Stone & Huffman, 414 U.S. 21, 94 S.Ct. 190, 38 L. Ed.2d 179, the Supreme Court said "we must take the statute as though it read precisely as the highest court of the State has interpreted it interpretation by [the state court] puts these words in the statute as definitely as if it has been so amended by the legislature." Claims of impermissible vagueness must be judged in that light.
Anyone would find that these books appeal to the prurient interest; they describe and depict sexual conduct in an offensive way; and, taken as a whole, they lack literary, artistic, political, or scientific value. If these books are relevant to our society today, the question is how much relevancy can society endure.
Many decisions have recognized that the terms of obscenity statutes are not precise. Lack of precision is not itself offensive to the requirements of due process. And the Constitution does not require impossible standards; all that is required is that the language convey sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947).
In my view the words of Article 106, applied according to the proper standards for judging obscenity, referred to above, give adequate warning of the conduct proscribed and mark boundaries sufficiently distinct for judges and juries to administer the law. Roth v. United States, 354 U.S. at 491, 77 S.Ct. 1304 (1957). This I knowI have no trouble whatsoever in finding that these publications appeal to the prurient interest, and that they are explicitly obscene, patently offensive and utterly without literary, artistic, political or scientific value. Why, when the matter is so clear to me, the majority, or, for that matter any reasonable person, would have difficulty in determining the said of the line between obscene and nonobscene on which these books fall is incomprehensible. How anyone could find that these books do not fall within the prohibition of this statute is hard to understand.
Other courts have experienced no difficulty with the language of statutes such as ours. In United States v. 12 200 Foot Reels of Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L. Ed.2d 500 (1973), in construing a Federal statute which condemns importation into the United States from any foreign country ". . . any obscene book, pamphlet, paper, writing, advertisement, circular, print, picture, drawing . . . or other article which is obscene or immoral. . ." (a statute containing none of the definitive elements of obscenity contended for by defendant) and refusing to declare that statute unconstitutional, the Court noted:
If and when such a "serious doubt" is raised as to the vagueness of the words "obscene", "lewd", "lascivious", "filthy", indecent", or "immoral" as used to describe regulated material in 19 U.S.C.

*476 Sec. 1305(a) and 18 U.S.C. Sec. 1462, see United States v. Orito, 413 U.S. 139, 93 S.Ct. 2674 at p. 2676, 37 L.Ed.2d 513 (1973), we are prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific "hard core" sexual conduct given as examples in Miller v. California.
Thus, the very Supreme Court which prescribes the guidelines in Miller v. California, which the majority in the instant case construes to hold our Act unconstitutional, is prepared to supply an interpretation to fulfill Miller in connection with the Federal Statute in 12 200 Ft. Reels. The Federal Statute contains no more for description than the word "obscene".
Other states have construed their obscenity statutes since the decision in Miller with special reference to its pronouncements. Massachusetts, in Commonwealth v. Claflin, Mass.App., 298 N.E.2d 888 (1975) upholds the constitutionality of the Massachusetts Statute against the claim that it contains "no clear standards by which obscenity may be judged." The statute actually is less explicit than Louisiana's, reading only that "whoever . . . sells or distributes a pamphlet . . . or other thing which is obscene, indecent or impure, or an obscene, indecent or impure print, picture . . . for the purpose of sale . . ." shall be punished.
In State, ex rel. Keating v. Vixen, 35 Ohio St.2d 215, 301 N.E.2d 880 (1973), Ohio upholds its statute in light of Miller upon remand from the United States Supreme Court, remand having been ordered for "further consideration in light of Miller." Adopting its construction prior to remand the Supreme Court of Ohio declared:
Those two sections [R.C. 2905.34 and 2905.35], now the law of Ohio, when construed together and applied to the instant facts, effectively provide that: "No person, with knowledge of the content and character of the . . . motion picture . . . involved, shall. . . present such motion picture before an audience which contains a series of displays . . . of sexual intercourse . . . . the cumulative effect of which is a dominant tendency to appeal to prurient interest, when the appeal to such interest is for commercial exploitation. . . ." (Italicized words supplied.) So stated, they prescribe conduct which "bears no necessary relationship to the freedom to speak, write, print or distribute information or opinion." Schneider v. State (1939), 308 U.S. 147, 161, 60 S. Ct. 146, 150, 84 L.Ed. 155.
Doubt can no longer remain that the depiction of purported acts of sexual intercourse on the movie screen and the public exhibition thereof "for commercial exploitation rather than for a genuine, scientific, educational, sociological, moral or artistic purpose" is forbidden by Ohio law. Here, there is no dispute as to the fact that "Vixen" does depict numerous acts of purported sexual intercourse, and obviously it does so for a commercial purpose . . .
The foregoing statute was held to comport with the standards enunciated in Miller. Therefore, the Ohio court adhered to its holding before Miller in the light of Miller.
Florida's statute prohibits the sale, distribution, showing or possession of "any obscene, lewd, lascivious, filthy, indecent, sadistic or masochistic book, magazine photograph, motion picture film. . . ." A prosecution in Rhodes v. State, 283 So.2d 351 (Fla.1973) for a 1971 offense resulted in a conviction. Referring to the "cluster" of eight U.S. Supreme Court decisions, including Miller v. California, rendered on June 21, 25, 1973, the Court discussed the constitutional sufficiency of its statute, saying:
As to the constitutional sufficiency of § 847.011 per se regarding no specific *477 elaboration on the words obscene, lewd and lascivious, we must take the constitutional view that although there is a new test of obscenity in the aforementioned recent federal opinions, it does not avail us insofar as the sufficiency of the statutory language is concerned for purposes of the earlier offense before us for review,
The unavailability of the new test, however, in the prosecution of an earlier offense, does not preclude a conviction, nor the upholding of the validity of our Florida statute. For Miller has said,
"As a result, we now confine the permissible scope of such regulation [by the state] to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritively construed, (emphasis added)."
By clear and continuing declarations we have for many years past "authoritively construed" the statutory language of "lewd and lascivious". We have said in plain, understandable language that these statutory words proscribe "an unlawful indulgence in lust; eager for sexual indulgence; open and public indecency" offensive to others.
We hold the language of Fla.Stat. § 847.011 F.S.A., as heretofore authoritatively construed to be sufficient to meet the requirements of notice to the person of ordinary understanding, of the conduct proscribed as obscene, lewd and lascivious such as that here involved. Such offender has accordingly had prior notice of our constant, clear judicial determinations with respect to "lewd and lascivious" in the statute.
Can any doubt remain that Louisiana's statute makes unlawful depiction of hard core sexual activity which is "offensive by any standard"?
I do not preclude the possibility, or probability, that future fact situations may present problems, but this one does not. Not only the language of the statute puts this defendant on notice, but the "authoritive construction" of the statute in our former decision in State v. Gay Times, Inc., State v. Roufa and State v. Henry leave little doubt what is prohibited by Louisiana law. At least material which is obscene "by any standard" is prohibited.
The holding of the majority declaring the obscenity laws of this State unconstitutional, prospectively and retroactively, leaves the State of Louisiana without any law whatsoever to regulate, limit or proscribe the dissemination or exhibition of obscene pornographic matter, no matter how vile or degrading. Our citizens, young and old, children and adolescents, too, then, are left to the detestable, dehumanizing and decivilizing influences of this nefarious trade.
This case, and the cases of Gulf States Theatres of Louisiana, Inc., v. Richardson, 287 So.2d 481 rendered December 3, 1973; State v. McNutt, 287 So.2d 478, rendered December 3, 1973, and State v. Gulf States Theatres of Louisiana, Inc. et al., 287 So. 2d 496, rendered December 3, 1973, bring to a crescendo the shambles this majority is making of the criminal laws of this State. In the short space of less than one year, in the long series of cases they have decided, reversing convictions, overruling existing jurisprudence, declaring legislative enactments unconstitutional and formulating rules of law properly within the realm of the Legislature, all favor the felon and misdemeanant; none has served the cause of law and order.
MARCUS, Justice (dissenting).
I dissent. I am of the opinion that R.S. 14:106, subd. A(2) and (3) are constitutional. We recently held the second section of this statute constitutional. State v. Gay Times, Inc., 274 So.2d 162 (La.1973). I find that the Louisiana Obscenity Statute *478 (R.S. 14:106) may be interpreted to meet the guidelines set forth by the United States Supreme Court in its recent decision in Miller v. California, 413 U.S. 15, 93 S. Ct. 2607, 37 L.Ed.2d 419 (1973).
If a criminal statute is so vague and indefinite that men of common intelligence must necessarily guess at its meaning and differ as to its interpretation, the statute is unconstitutional. However, when the language of the statute is sufficiently descriptive and has a fixed and well-accepted meaning, it is not overly broad and indefinite so as to make it unconstitutional. I find that the Louisiana Obscenity Statute makes it clear as to the type of conduct which would constitute a violation of the statute. It is not overly broad or indefinite. Accordingly, it may be interpreted by this Court in accordance with the guidelines set forth in the Miller case. I disagree with the majority that R.S. 14:106, subd. A(2) and (3) are unconstitutional.
NOTES
[1] As amended by Act 199 of 1960.
[2] Reversed by the United States Supreme Court in per curiam, "The motion to dismiss is granted and the appeal is dismissed for want of jurisdiction. Treating the papers whereon the appeal was taken as a petition for a writ of certiorari, certiorari is granted and the judgment is reversed. Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515." Henry v. Louisiana, 392 U.S. 655, 88 S.Ct. 2274, 20 L.Ed.2d 1343.
[3] See also: Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); United States v. Orito, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973); Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973); United States v. 12 200 Ft. Reels of Super 8mm. Film et al., 413 U.S. 12, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973).
[4] On November 5, 1973, the United States Supreme Court, in Gay Times, Inc. v. Louisiana, ___ U.S. ___, 94, S.Ct. 346, 38 L.Ed. 2d 232, vacated our judgment in State v. Gay Times, Inc., 274 So.2d 162 (La.1973), and remanded the case for reconsideration in light of Miller v. California, and others.
[1] La.Crim.Code art. 106A(2) and (3) provides:

"A. Obscenity is the intentional:
"(2) Production, sale, exhibition, gift, or advertisement with the intent to primarily appeal to the prurient interest of the average person, of any lewd, lascivious, filthy or sexually indecent written composition, printed composition, book, magazine, pamphlet, newspaper, story paper, writing, phonograph record, picture, drawing, motion picture film, figure, image, wire or tape recording or any written, printed or recorded matter of sexually indecent character which may or may not require mechanical or other means to be transmitted into auditory, visual or sensory representations of such sexually indecent character.
"(3) Possession with the intent to sell, exhibit, give or advertise any of the pornographic material of the character as described in Paragraph (2) above, with the intent to primarily appeal to the prurient interest of the average person."