HAMITER, Justice.
 

 Percy Henry was charged in a bill of information with violating LRS 14:106 (as amended), the Louisiana Obscenity Statute. He was tried and convicted. Later, he was sentenced to pay a fine of $301 and costs, and in default of payment of the fine and costs to serve thirty days in the parish jail. He is appealing from the conviction and sentence.
 

 At least six bills of exceptions, reserved during the course of the proceedings, were perfected and are contained in the record. Here, defense counsel, both in brief and orally and contrary to the preferred procedure in this court, has argued the case on the basis of specifications of error rather than on the bills of exceptions. We shall discuss the issues as presented in the bills; and we shall relate them, as best we can, to the alleged specifications.
 

 Bill No. 1 was reserved to the court’s overruling defendant’s motion to quash the bill of information. In the motion it is urged that (1) the statute under which the defendant was charged is unconstitu
 
 *689
 
 tional and (2) the bill of information is •defective in that it is too vague and indefinite to enable him to prepare a defense.
 

 LRS 14:106 (as amended), insofar as pertinent, reads:
 

 “A. Obscenity is the intentional:
 

 “(2) Production, sale, exhibition, gift, •or advertisement with the intent to primarily appeal to the prurient interest of the average person, of any lewd, lascivious, filthy or sexually indecent written composition, printed composition, book, magazine, pamphlet, newspaper, story paper, writing, phonograph record, picture, drawing, motion picture film, figure, image, wire or tape recording or any written, printed or recorded matter of sexually indecent character which may or may not require mechanical or other means to be transmitted into auditory, visual or sensory representations of such sexually indecent character.
 

 “(3) Possession with the intent to sell, exhibit, give or advertise any of the pornographic material of the character as described in paragraph 2 above, with the intent to primarily appeal to the prurient interest of the average person.”
 

 The bill of information herein recites that the accused “ * * * on or about the 26th day of January, in the year of our Lord 1965, in the Parish of Iberia, aforesaid and within the jurisdiction of the Sixteenth Judicial District of the State of Louisiana did unlawfully and intentionally produce, sell, exhibit and advertise, and possess with the intent to sell, exhibit and advertise, certain lewd, lascivious, filthy and sexually indecent printed compositions, books, magazines, pictures, figures, images and drawings, with the intent to primarily appeal to the prurient interest of the average person, in violation of La.R.S. 14:106: OBSCENITY.”
 

 The crime of obscenity under LRS 14:106 (as amended) can be committed in a number of different ways, but it is apparent that this defendant was charged only with having committed the conduct denounced in paragraphs (2) and (3) of the statute. Consequently, our discussion of the assertion of unconstitutionality will relate only to those two paragraphs, the others being immaterial to this prosecution.
 

 The defendant alleges that the statute is unconstitutional because it violates the provisions of the United States Constitution and our own constitution relative to freedom of speech, of the press, and of expression; and, further, because its terms are too vague and indefinite to sufficiently describe the acts denounced.
 

 There is no substance in the first alleged ground of unconstitutionality. It is now well settled by decisions of the United States Supreme Court and of this
 
 *691
 
 court that the constitutional guarantees relied on by defendant are not absolute and that their abuse in the area of obscenity can be restricted and controlled. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, Ginsburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31, Mishkin v. State of New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56, and State v. Roufa, 241 La. 474, 129 So.2d 743.
 

 Nor do we find any merit in the second alleged ground of unconstitutionality. The same contention was made in State v. Roufa, supra. At that time the pertinent part of LRS 14:106A(2) (as amended by Act 388 of 1958) provided: “Obscenity is the intentional:
 

 «
 
 * * *
 

 “(2) Production, sale, exhibition, possession with intention to display, exhibit, or sell, or the advertisement of, any obscene, lewd, lascivious, filthy, or sexually indecent print, picture, motion picture, written composition, model, instrument, contrivance or thing of whatsoever description; * * We said of the statute:
 

 “The words of the instant statute have a well defined and a common accepted meaning and are not vague.” (See also Roth v. United States, supra, wherein the United States Supreme Court maintained a very similarly worded California statute against an attack made on the same ground asserted here.)
 

 By Act 199 of 1960 the statute was-amended so as to read as hereinabove first set forth. A comparison of the two texts, immediately reveals that the amendment, in no way impaired the statute’s clarity.. The only material change was to insert the-provisions requiring a specific intent on the part of the alleged offender, this for' the obvious purpose of having the statute meet the test of constitutionality set forth in the Roth decision, supra — that is, that the denounced conduct be committed with the intent to appeal to the prurient interest of the average person. If anything, the amendment narrowed the effect of the statute and further clarified the meaning of the term “obscene”.-
 

 Moreover, in City of Hammond v. Conner, 250 La. 462, 196 So.2d 276; the accused was charged, in an affidavit, with the violation of an ordinance of the City of Hammond, the pertinent provisions of which are substantially identical to those of the instant statute. Like this defendant he, in a motion to quash the affidavit, assailed the constitutionality of the ordinance on the same grounds urged here. The motion was overruled. Following the accused’s conviction and sentence he applied to this court for writs, reurging in the application the motion to quash. We denied the writs, observing that “we find no error of law with respect to the * * * complaints made by relator.”
 

 
 *693
 
 Likewise, we have found groundless the • defendant’s assertion that the bill of information should be quashed because “it • does not meet the statutory and constitutional requirements which make it mandatory that such bill of information allege .all of the facts and elements which are necessary to clearly inform the accused of the nature and cause of the accusation -against him.” His contention, in other words, is that the instant information is insufficient because it does not list the names of the magazines allegedly handled. Incidentally, following the overruling of the motion to quash, he was given all of ■ such names by the state in a requested bill of particulars.
 

 Although not cited in defendant’s brief, the constitutional and statutory provisions apparently relied on are Article I, Section 10 of the Louisiana Constitution of 1921 and LRS 15:227. The former provides that '“In all criminal prosecutions, the accused shall be informed of the nature and cause ■ of the accusation against him; * * ' The latter recites: “The indictment must state every fact and circumstance necessary to constitute the offense, but it need do no more, and it is immaterial whether the language of the statute creating the offense, or words unequivocally conveying the meaning of the statute, be used.”
 

 Reference to LRS 14:106 (as amended) shows that the crime of obscenity may be committed, as aforeshown, in numerous unrelated fashions. The language used in this bill of information clearly delineates the particular manner in which the alleged violation occurred, it tracking certain portions of paragraphs (2) and (3) of the state.
 

 In State v. Odom, 247 La. 62, 169 So.2d 909 we observed: “* * * The rule is well settled that an indictment charging an offense in the language of the statute defining it is sufficient. State v. Scheuering, 226 La. 660, 76 So.2d 921; State v. Kershaw, 234 La. 579, 100 So.2d 873. The exception to this rule is that, where a statute characterizes the offense in general or generic terms an information charging the offense in the words of the statute is insufficient and the specific facts on which the charge is based must be set out therein. State v. Blanchard, 226 La. 1082, 78 So.2d 181, citing State v. Varnado (on rehearing), 208 La. 319, 368, 23 So.2d 106 and other authorities.”
 

 Although the Varnado decision (cited in the foregoing quotation) was not relied on by this defendant, a member of this court suggested during oral argument that it might be applicable here. We think it in-apposite. In the Varnado case it was pointed out that the statute involved there denounced the crime of gambling in very general or generic terms (games, contests and contrivances), and the bill of information therein charged the accused in the same
 
 *695
 
 terms. Here LRS 14:106A(2 and 3), on the contrary, defines the crime of selling, exhibiting or possessing obscene materials with the greatest precision; it specifically lists and identifies the types or classes of matter covered.
 

 Consequently, we are of the opinion that the bill of information herein, which tracked portions of the statute and charged the defendant with having possessed, exhibited and sold books, magazines, pictures and drawings, fully informed of the nature and cause against the accused; it stated every fact and circumstance to constitute the offense charged; and, we think, it contained sufficient information to enable him to prepare his defense. Had the statute denounced merely the possessing, exhibiting and sale of obscene “reading matter” or “printed materials” (or some other such generic term), and the bill of information had tracked the language thereof, then, perhaps, the rationale of the Varnado decision, supra, might be pertinent.
 

 Applicable to the defendant’s challenge herein to the sufficiency of the bill of information, we think, is this court’s ruling in State v. Esposito (1954), 226 La. 114, 75 So.2d 27. Therein, according to the record, the bill of information (only a portion of which is quoted in the opinion) recited that the accused “did then and there, willfully and intentionally produce, sell, exhibit and possess, with the intent to display and advertise sexually indecent prints, pictures, written compositions, models and instruments; * * *" The defendant had urged that the charge, laid under LRS 14:106A(2), was faulty in that it failed “to satisfactorily and rigidly set out a crime in that the wording of the information or indictment is too' vague for defendant to be required to plead to or stand trial against said accusation.”' We held the bill of information to be sufficient.
 

 We are not impressed by the argument that it was necessary for the information herein to contain the particular names, of the numerous magazines involved. Indeed, it is entirely immaterial what the names of the magazines or pictures were, or even if they had none at all. We think that a recitation of specific names, particularly when they are many as here, would unduly and unnecessarily extend the length of the bill of information. In a case of this kind such names may be obtained by the requesting of a bill of particulars. These were furnished to this defendant in that manner prior to his trial.
 

 The motion to quash the information, covered herein by bill No. 1, was properly overruled.
 

 Bill of exceptions No. 2 was taken to the trial court’s overruling defendant’s motion for a jury trial. The bill was not discussed by defense counsel either in the brief or oral argument. We therefore
 
 *697
 
 deem it abandoned. Nevertheless, we have considered it and find no merit therein. Because the charge is a misdemeanor, defendant was not entitled to a trial by jury. Louisiana Constitution of 1921 Article VII, Section 41, LRS 15 :341 and 340. See also State v. Green, 210 La. 190, 26 So.2d 693.
 

 Bill No. 4 was reserved under the following circumstances. A state witness, Donald L. Delcambre, who had previously testified that he had read and examined the material on which the prosecution was based, was asked his opinion as to what the content and dominant theme of the magazines were. Defense counsel objected. Thereafter there ensued lengthy discussion among counsel and the court as to the purpose and propriety of the question. Defense counsel’s objection, it appears, was based on the theory that the query was intended to elicit from the witness whether he personally considered the magazine obscene. However, the observations of the state’s attorney show that its purpose was to establish that the content of the magazines was devoted primarily to sex, thus laying the basis for permitting the state to later establish by the witness that the treatment of the content (sex) was such as to appeal to the prurient interest of the average individual of the community.
 

 The transcript of the colloquy clearly indicates that the judge fully understood the state’s purpose. Besides, when the witness, in answering the question, attempted to inject his personal opinion into his response and defense counsel objected the objection was sustained. In any event, defense counsel himself, when he subsequently cross-examined the witness, completely elicited the witness’ personal opinion as to the obscenity of the magazines’ content, even with regard to specific portions thereof.
 

 We therefore hold that the bill is without substance.
 

 Following the ruling complained of above (in bill No. 4) the court permitted the witness Delcambre over defendant’s objection to testify as to his opinion concerning the material on which the prosecution was based, it relating to an appeal to the prurient interest of the average person in the community where the magazines were being sold. When the objection was overruled, bill No.
 
 7
 
 was reserved. While the perfected bill recites that the objection was made because the witness was not shown to be qualified to express such an opinion, defense counsel here urges a second reason, to wit: that the court erred in “restricting, in effect, the meaning of ‘contemporary community standards,’ and the proof thereof, so as to determine same on a purely local —rather than on a national — basis.”
 

 Neither of such reasons can serve as the basis for a reversal. As to the first, the witness, who was the president of a local bank, was shown to have lived all of his life in the
 
 *699
 
 community, except for short intermittent periods of absence spent in college and in the military during the war. From his early years until the time of trial he had been engaged for a livelihood in occupations involving extensive public contact and had ■served actively in numerous organizations which dealt with civic, social and religious .affairs of the community. Indeed, it appears that it would have been difficult to find another so well qualified to express an ■opinion as to the “average person” in the ■community. Moreover, such qualification would relate to the weight of the witness’ testimony rather than to its admissibility.
 

 In arguing that a “national” average man should be selected in applying the test laid down in the Roth decision, supra, rather than such a person of the community where the allegedly offensive material is handled, defendant relies on Jacobellis v. State of Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793. The state has very ably pointed out that the Jacobellis opinion was signed by ■only two members of the United States Supreme Court, all of the others having written special reasons of their own for concurring or dissenting. Besides, two later cases, Mishkin v. State of New York, supra, and Ginsburg v. United States, supra, reverted to the “community” standard set forth in the Roth decision, supra. Moreover, the formulation and application of any sort of national test is a task which we ourselves would hesitate to attempt, much less to require it of the district court.
 

 But be that as it may, the issue is purely academic here. It may be that in making his ruling as to the defendant’s guilt or innocence, the trial judge considered only what he was qualified to judge — whether the material introduced in evidence was possessed and sold with the intent of appealing to the average person of the community in which the sales occurred. But that does not mean that the material was not also of such nature as to offend a standard based on the mores of the average person considered from a “national” viewpoint, as might be conceived by the United States Supreme Court in its nationwide wisdom. Whether it failed to meet such a test can be determined only by an inspection of the material itself which is not, legally or actually, a part of the record before us, this for the reason that defendant did not request that the exhibits be attached to any of his bills.
 

 The record discloses that the defense was based primarily, if not exclusively, on the theory that the accused had not examined and did not know the contents of the material he sold and, consequently, could not have intended by his conduct to appeal to the prurient interests of average persons. (He has made no attempt in this court to defend the magazines’ content.) He introduced no testimony to show that the material was not obscene (by any stand
 
 *701
 
 ards) or that it had any saving graces whatsoever, such as artistic or literary value. In view of these circumstances, as well as for the reason that the magazines are not before us, we cannot say that the district court’s ruling that they are legally obscene does not meet the constitutional test judged by a national yardstick.
 

 Bills Nos. 5 and 6 were taken to rulings made during the direct examination of the Reverend James Conlon, a Roman Catholic priest and a witness for the state. The objections and the rulings thereon were the same as those involved in our discussion of bills 4 and 7. What we have said with reference to those bills is equally applicable to these, the only difference relating to particular facts concerning Reverend Con-Ion’s background and his knowledge of the community, and its inhabitants. They, of course, are not identical with Delcambre’s. However, our conclusion reached on the issues is the same.
 

 When the witness Delcambre was on the stand defense counsel attempted to cross-examine him about certain books exhibited in the local public library and about certain motion pictures displayed in local theatres. The announced purpose was to establish the community standard on obscenity. When the state’s objection to such line of questioning was sustained bill No. 8 was reserved.
 

 We agree with the court’s ruling that such evidence as was attempted to be introduced was improper because it was irrelevant. Under recent United States Supreme Court decisions the content of a publication may be designed to appeal to the prurient interest of the average person; but it is not necessarily “obscene”, so as to fall outside the constitutional safeguards, unless it is utterly worthless, that is, unless it has no redeeming literary, artistic, historical or other merit whatsoever.
 

 Moreover, as the district judge properly observed in his per curiam to this bill, “ * * * if other books and some picture shows are prohibited under the obscenity statute, it is no excuse or defense for the violation of the statute in other respects any more than the violation of any other law would excuse its further violation.
 

 “It is not proper to compare the publications in evidence to other works that may seem to be tolerated because we would then have to inquire into these -other publications to find out if they were in fact pornographic. We would in effect be trying every publication that the defendant might suggest. Such a trial would practically have no end.”
 

 Bill of exceptions No. 3 was taken to the overruling of the defendant’s motion for a new trial. The errors complained of in the above mentioned reserved bills of exceptions, which were reurged in the motion, need not be further discussed. However, additionally, the motion averred that the state had failed to discharge its burden of
 
 *703
 
 'establishing all of the essential elements of the offense charged. In this connection, in the brief to this court, the defense asserts : “The defendant submits that
 
 the record in the case does not disclose any evidence whatsoever
 
 that the defendant possessed or sold any magazine of any kind
 
 ‘with the intent
 
 to primarily appeal to the prurient interest of anyone.’ * * * ”
 

 As this court has previously noted, criminal intent or guilty knowledge is .a question of fact for the trial judge or the jury. It is almost impossible of proof by the state through the use of direct evidence; and, ordinarily, it can be made only by showing circumstantial evidence giving rise to inference. State v. Birdsell, 232 La. 725, 95 So.2d 290. See also State v. Roufa, supra. Nevertheless, we have reviewed the testimony respecting this bill and find that it amply supports the trial judge’s conclusion.
 

 For several months prior to the date of the alleged offense the defendant was informed by police officials of the Town of New Iberia, and also by members of a citizens committee, that some of his publications were “objectionable”. (Initially, he was furnished with a list of such publications.) Additionally, as the trial judge states in giving his reasons for overruling the motion for a new trial, “ * * * obviously, the photographs and the advertisements on the covers of the magazines were sufficient to place him [the accused] on notice that the books were pornographic.”
 

 On direct examination the defendant denied knowledge of the magazines’ content, and he stated that he entertained no criminal intent in 'selling them. However, he later said that he had looked through the magazines when the chief of police was in the store to make a complaint, and that he had told the latter that some of the others were worse than the ones complained of. Like the district judge, we find it difficult to understand how he was able to make such a comparison if he did not know the content of the periodicals.
 

 Moreover, the defendant specifically admitted that he knew the “general content as to what coverages we had”, and that he had discussed with the police officers the possibility of keeping the “objectionable” magazines off the general rack if he were permitted to sell them from a separate rack handled only by the cashier.
 

 Quite obviously the assertion of defendant that there was no evidence to establish intent and guilty knowledge is totally groundless.
 

 For the reasons assigned the conviction and sentence are affirmed.