430 So.2d 621 (1983)
STATE of Louisiana
v.
Joseph ALEXANDER, Jr.
No. 82-KA-0481.
Supreme Court of Louisiana.
April 4, 1983.
*622 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., James D. Caldwell, Dist. Atty., Crawford Rose, Asst. Dist. Atty., for plaintiff-appellee.
Raymond Cannon, Tallulah, for defendant-appellant.
CALOGERO, Justice.
Defendant Joseph Alexander, Jr., was charged by Madison Parish Grand Jury indictment with second degree murder, a violation of La.R.S. 14:30.1. Defendant was tried by jury and found guilty of manslaughter, a violation of La.R.S. 14:31.[1] After ordering a pre-sentence investigation, the trial court sentenced defendant on December 29, 1981, to the statutory maximum twenty-one years imprisonment at hard labor.
Defendant appealed his conviction and sentence on the basis of fourteen assignments of error. We find these assignments to be meritless. We therefore affirm defendant's conviction and sentence.
In the opinion proper we will treat assignments of error numbers 2, 3 and 13. The remaining assignments of error involve legal issues governed by clearly established principles of law. They will be treated in an unpublished appendix which will comprise part of the record of this case.
The following facts were adduced at trial. On March 12, 1981, at approximately 2:00 A.M., defendant made his third visit[2] of the night to Linda Diane Campbell's house, actually Linda's parents' home. Linda and Joe Alexander had been seeing each other for several years, but had broken off the relationship shortly before.[3] When Joe returned to the house for the third time, he saw Eddie Johnson's car parked there. Eddie and Linda were in Linda's bedroom when Joe arrived. An off-duty Tallulah policeman, Joe placed his .357 magnum in his belt before he approached the house. He went first to Linda's bedroom window, knocked, and told Linda that he wanted to talk to her. He then went to the front door and rang the bell. Linda admonished her father, lying on the couch, not to let Joe into the house. When Joe persisted at the door, Linda finally told her baby sister, Donna, to open the door. Linda retreated to her bedroom and closed the door.
Joe entered the house, walked back to Linda's bedroom, and knocked on the door. When Linda refused to open the door, Joe knocked or shoved it, in order to gain entry. What transpired in the bedroom must be gleaned from conflicting testimony. According to Eddie Johnson, Joe came into the room and started fighting with Linda. Eddie threw Joe off of Linda. Defendant pointed the gun at Eddie; Linda intervened. Joe then struck Linda with the gun and knocked her from between them onto the bed. Then as Linda struggled back to her feet, Joe shot her in the back.[4]
Joe then fled and was arrested the following day in Columbia, Louisiana. He told officers that he had thrown the gun away prior to arrest. The gun was never found.

ASSIGNMENT OF ERROR NUMBER 2
One theory concerning the incident which the State attempted to present to the jury was that the accused went to the victim's house that night, looked in the window, observed the victim and Eddie Johnson in bed, and then rushed in and shot her. Thus *623 the State attempted to establish during the direct examination of Jackie Lott, the Louisiana State Trooper who investigated the crime, that Detective Lott had been told, apparently by members of the family of the victim, that the curtains in the victim's bedroom at one time earlier on the night in question had been open. When Detective Lott responded to a question, "I was told...," defense counsel interrupted him with an objection which the trial judge sustained. The State rephrased the question: "What did you learn during the course of the investigation concerning the curtains?" to which the detective answered, "At one point prior to the incident the curtains were open." At that point the defense protested and asked that the jury be removed. Defense counsel argued that the State had used a "left-handed attempt" to have the jury learn of the hearsay about the curtains after earlier objections to questions along the same line had been sustained. The trial judge agreed that had the defense objected to the question timely, that objection too would have been sustained. But the judge found that since no objection was made before the witness answered, the court was unable timely to sustain the objection. At that point defendant did not move for a mistrial.
The defendant's assignment of error No. 2 argues that the officer's response was inadmissible hearsay and that the trial court's ruling that the witness' answer was "admissible" constituted prejudicial error.
Of course the trial judge did not rule that it was admissible, but rather, simply that the objection had not come at a time when sustaining it would have been effective.
It is well established jurisprudentially that the failure to make a contemporaneous objection at the time of the error waives the complaint on appeal. La.C.Cr.P. art. 841; State v. Vanderhoff, 415 So.2d 190 (La.1982). Jurisprudence has recognized certain limited exceptions to this rule based upon prejudice to the due process rights of the defendant. See State v. Smith, 418 So.2d 534 (La.1982); State v. Hayes, 364 So.2d 923 (La.1978); State v. Lee, 346 So.2d 682 (La.1977).
The record in the instant case shows that the State succeeded in eliciting improper hearsay testimony notwithstanding that earlier meritorious objections by the defense had succeeded in barring that same hearsay testimony. Whatever the effect of this impermissible testimony on the jury, it cannot be said that defendant's due process rights were violated. State v. Hayes, supra; State v. Smith, supra.
Traditional reasons for the exclusion of hearsay statements are based on the unreliability and unfairness to defendant in cutting off his substantive constitutional right of cross-examination of the out-of-court declarant. State v. Bazile, 386 So.2d 349 (La. 1980). Here defense counsel was able to cross-examine thoroughly the declarants quoted by Detective Lott. Also significant in minimizing the prejudice to defendant was the fact that photographs were admitted into evidence which showed that the curtains, at least at the time that the photographs were taken, were closed.
In any event there was no erroneous ruling by the trial judge, who was not afforded an opportunity to rule on a timely objection, or upon a motion for mistrial, for neither was made.
The assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER 3
Defendant asserts that the trial court erred by admitting the conclusions of a lay witness, Eddie Johnson, that the weapon was pulled in anger and not discharged accidentally.
Defendant argues that La.R.S. 15:463 prohibits testimony as to an impression or opinion of a non-expert witness such as Eddie Johnson. The following excerpt contains the testimony objected to by the defense:
JAMES CALDWELL: Okay. What was your observation of Mr. Alexander's action when he pulled the gun, when he fired the gun?
EDDIE JOHNSON: Well, when he pulled the gun, it was out of anger. I mean, he was mad.

*624 JAMES CALDWELL: Okay. When he did the shooting, was there any indication for you, to you from what you observed that it was an accidental shooting?
RAYMOND CANNON: Objection, Your Honor. That is still calling for a conclusion.
JAMES CALDWELL: Certainly it is. A lay witness can testify to his lay-observations.
JUDGE ADAMS: Let the witness answer.
EDDIE JOHNSON: No.
JAMES CALDWELL: No what? Can you explain your answer.
EDDIE JOHNSON: No. It didn't seem like an accident. No. Not by my seeing it, no.
Prior to the above quoted excerpt, defense counsel had objected when the State began that line of questioning, which according to the defense, was asking for "a conclusion in the guise of an observation." Stating that the witness' observation was involved, the trial judge overruled the objection.
Generally a lay witness can only testify to the facts within his knowledge and not to impressions or opinions; however a witness is permitted to draw reasonable inferences from his personal observations. See State v. Vanderhoff, supra; State v. Sayles, 395 So.2d 695 (La.1981); State v. Williams, 353 So.2d 1299 (La.1978), cert. denied, 437 U.S. 907, 98 S.Ct. 3098, 57 L.Ed.2d 1138 (1978); State v. Davalie, 313 So.2d 587 (La.1975).
The pertinent inquiry centers on whether Eddie Johnson's testimony constituted speculative opinion evidence or simply recitation of or inferences of fact based upon the witness' observations, and whether the testimony, if erroneously admitted, was so prejudicial to defendant as to constitute reversible error.
This Court in prior cases has found no error in a trial judge's ruling preventing defense counsel's asking a victim if he had been accidentally injured by the defendant, State v. Anderson, 333 So.2d 919 (La.1976) and State v. Kirklin, 283 So.2d 713 (La. 1973), or from asking a third party whether the defendant swung the gun as if to pull the trigger, State v. George, 346 So.2d 694 (La.1977). The holdings in those cases should equally bar the district attorney from asking a witness whether in the witness' opinion a shooting was accidental.
However, the question here did not so directly call for an opinion as it asked for the witness' observation; the witness' answer in any event was not sufficiently prejudicial to warrant reversal of the conviction. The witness merely stated that it did not seem like an accident, rather than the more affirmative expression of his opinion that it was not an accident. The query was in part fairly directed at what the witness observed: "When he did the shooting, was there any indication for you, to you from what you observed that it was an accidental shooting?" That question did not go so much to defendant's intention as to the witness' observations of the occurrence.
There exists no bright line between opinion and fact. State v. Short, 368 So.2d 1078 (La.1979), cert. denied, 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979). See also McCormick's Handbook of the Law of Evidence, Section 11 (2d ed. 1972). In discussing La.R.S. 15:463, this Court has stated that "the opinion rule should not be applied so strictly as to exclude first-hand testimony that may be several inferences removed from raw sense perceptions, yet more helpful to the jury than mere recitation of such perceptions." State v. Short, 368 So.2d at 1081.
This Court has condoned a trial court ruling which allowed a witness' testimony as to whether the defendant was passive, or not shocked when an armed robber entered the store, State v. Sims, 346 So.2d 664 (La.1977), and a mother's testimony as to whether the victim was scared of the defendant, State v. Adams, 394 So.2d 1204 (La.1981). If the testimony constitutes a natural inference from what was observed, there is no prohibition against it as the *625 opinion of a non-expert witness as long as the lay witness states the observed facts as well. State v. Roche, 341 So.2d 348 (La. 1976). In the instant case, Eddie Johnson's testimony could arguably be viewed as a statement of what he naturally inferred from his observations. In any event, even if technically inadmissible, the questions and answers were not so prejudicial as to warrant reversal of the conviction.
Therefore, this assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER 13
Defendant contends that the trial court erred in denying a supplemental motion for a new trial based upon the trial court's statement that a "hung jury" would not be accepted.
On October 29, 1981, the jury retired at 4:52 P.M. after being given instructions by the trial judge. At 10:00 P.M., following approximately five hours of deliberation, the jury returned to the courtroom and the following discussion took place between the jury foreman, Duncan, among others, and the trial judge:
JUROR DUNCAN: We do not seem to be close in our opinion and we wanted to know if we needed to-we are all just tired and exhausted, and we wanted to know what we could do legally.
JUDGE ADAMS: Do you feel that further deliberation will accomplish anything?
JUROR DUNCAN: No sir. We are all of the opinion that it will not accomplish anything.
JUROR CARTWRIGHT: It's a possibility that it might change.
JUROR ROY: No, I don't think so at all.
JUROR CARTWRIGHT: It's changed some in the last couple of hours.
JUROR ROY: Yes, it has.
JUDGE ADAMS: Now ...
JUROR DUNCAN: I can't speak for them, then.
JUDGE ADAMS: Well, we have this alternative and that is we can send ya'll to the motel for the night or you can deliberate longer. The Court is not going to accept this as a hung jury. The people of this Parish have a lot involved and a lot at stake at this point. And if it were to be a hung jury, it would mean that it, we would be confronted with it again and we would meet with the same situation and uh, I'm not going to entertain a hung jury at this time. I say that reluctantly, but this Court feels it cannot afford to do so. If you feel and if you would rather go back in there and deliberate about that, you may. Your alternative is to go to bed at the motel until you see fit to
After an additional thirty minutes of deliberation, the jury returned. After two improper verdicts,[5] the jury returned a verdict of guilty of manslaughter.
Defendant argues for a reversal of his conviction on the basis that the jury's verdict was improperly coerced by the trial judge's remark that he would not "accept this as a hung jury..." Defense counsel did not object to the court's statements at the time. If defendant fails to object to the alleged error at the time that it occurs, defendant cannot object to the error after the verdict. La.C.Cr.P. art. 841; State v. Vanderhoff, supra. In brief, defense counsel states that he was not impressed by the court's statements as constituting error at the time and therefore did not object or seek a mistrial. He says that he did not find the case on point to support the contention that the trial judge's words constituted reversible error until after he had filed his first motion for a new trial. Thus he argued this point for the first time in a supplemental motion for a new trial. It was denied.
At the hearing on that motion, the State pointed out the lack of a contemporaneous objection; however, the fact that the defense had not timely objected was not the basis of the trial court ruling. In response to the defense attack on his handling of this matter, the judge stated that during the dialogue with the jurors he had discerned *626 numerous jurors who did not agree with the foreman that the jury could not reach a verdict. The trial court "was definitely impressed that they [the jurors] felt that a verdict could be reached." The judge distinguishes the case cited by the defense in its motion for a new trial and its brief to this Court, State v. Rodman, 208 La. 523, 23 So.2d 204 (1945), by noting that in Rodman, the jurors had emphatically stated that it was impossible for them to reach a verdict.
Rodman is distinguishable from the bulk of the cases in the jurisprudence because of its peculiar facts. Louisiana adheres to the general rule as enunciated in Annotation, 93 A.L.R.2d 627-718 (1964) at 636:
The general rule, as stated in Am Jur, Trial (1st ed § 962) ... is said to be that the length of time a jury may be kept in deliberation is a matter resting within the sound discretion of the trial judge, and that his action in keeping them confined for a reasonable time, refusing to discharge them at their request or sending them back for further deliberation, does not ordinarily by itself constitute an abuse of discretion or amount to conduct which will be considered improper as influencing or coercing the jurors into reaching an agreement.
The Annotation properly notes that Rodman is an opinion which recognizes the general rule, but nevertheless finds reversible error because of specific facts and circumstances of the case.
In Rodman, the jury foreman had stated that the jury members could not agree and wished to report a mistrial. The court stated that a mistrial would not be accepted. After the foreman again stated that the jurors could never agree, the judge told the jury to renew deliberations. After the foreman then said, "Well, suppose we can't ever agree," the judge stated that the jury had to return to the jury room. After less than one hour, the jury returned a guilty verdict with a 9 to 3 vote. This Court found that the language of the judge may have coerced a verdict and therefore constituted reversible error.
In other Louisiana cases, absent dialogue as in Rodman, where the judge completely avoided any qualified language (such as "at this time" in the case under consideration), reversible error has not been found when the judge speaks to the jury[6] and sends the jury members back for further deliberation after the jury foreman has reported that the jury is deadlocked. State v. Knight, 323 So.2d 765 (1975); State v. Green, 282 So.2d 461 (La.1973) cert. denied, 415 U.S. 985, 94 S.Ct. 1580, 39 L.Ed.2d 882 (1974); State v. Mims, 263 La. 193, 267 So.2d 570 (1972). See also State v. Monroe, 397 So.2d 1258 (La.1981); State v. Rudolph, 332 So.2d 806 (1976), cert. denied, 429 U.S. 982, 97 S.Ct. 496, 50 L.Ed.2d 591 (1976); State v. Schamburge, 344 So.2d 997 (1977); Sanders v. U.S., 415 F.2d 621 (5th Cir.1969) cert. denied, 397 U.S. 976, 90 S.Ct. 1096, 25 L.Ed.2d 271 (1969). But see State v. Williams, 392 So.2d 619 (La.1980) (on rehearing); State v. Nicholson, 315 So.2d 639 (La. 1975); State v. Ladd, 10 La.Ann. 271 (1855); State v. Green, 7 La.Ann. 518 (1852).
It is safe to state as a settled proposition that when the Court is informed by a jury that they cannot agree, it is not error for the Court to impress upon them the importance of the case, urge them to come to an agreement, and send them back for further deliberation; for the question of the discharge of the jury because of inability to agree on a verdict is within the sound discretion of the trial judge, and the exercise of that discretion will not be set aside in the absence of *627 palpable abuse. (citations omitted) State v. Governor, 331 So.2d 443, 453 (La.1976).
In the instant case the words of the trial court did not exert an undue influence upon the jury in reaching its verdict. Unlike the circumstances in Rodman, here the jury members did not all believe that the jury was deadlocked. The trial judge did not state that he would never accept a hung jury; rather he said that he would not "entertain a hung jury at this time." The trial judge did not abuse his discretion in this matter by opting to return the jurors for further deliberations, nor did his language compel the jury to reach a verdict under his coercive influence. Thus the trial court's ruling denying the supplemental motion for a new trial did not constitute error.
This assignment therefore lacks merit.

Decree
For those assigned reasons defendant's conviction and sentence are affirmed.
AFFIRMED.
DENNIS, J., concurs with reasons.
DENNIS, Judge, concurring.
I respectfully concur.
In general courts should be wary about allowing opinion testimony concerning the "ultimate" issue in a criminal case. See State v. Wheeler, 416 So.2d 78 (La.1982); McCormick on Evidence, § 12, p. 26 (1972).
However, in the present case I agree with the majority that the testimony of the witness was not sufficiently prejudicial to warrant reversal of the defendant's conviction. The record reveals that the witness testified clearly both before and after the questions to which the objections were raised that the gun did not discharge while the defendant and the victim were engaged in the scuffle; that the defendant shot the victim in the back after he had beaten her and thrown her face down on the bed; and that the witness was looking at the victim and not the defendant when the fatal shot was fired. Therefore, it should have been clear to the jury that his "opinion" was nothing more than his inference from these facts. Consequently, the witness's testimony to this inference did not add anything beyond his factual testimony to the state's case or to the detriment of the defense.
Accordingly, I cannot conclude that a substantial right of the defendant was violated by this testimony or that there is a reasonable possibility that the alleged errors contributed to his conviction. La.C. Cr.P. art. 921; State v. Gibson, 391 So.2d 421 (La.1980).
NOTES
[1] Ten of the jurors voted guilty; two jurors voted not guilty.
[2] Defendant had been there twice before according to Linda's mother; Joe had inquired as to whether Linda was home once at about 10:00 P.M. and again about 12:00 midnight.
[3] According to defendant, he had been staying with Linda for about three years off and on. He and Linda had broken up and reconciled several times before.
[4] Joe testified that the gun discharged accidentally during a struggle over it. Joe testified that he had not intended to shoot Linda; he had pulled the gun only to scare Eddie Johnson.
[5] The first two verdicts contained superfluous language.
[6] The A.L.R. Annotation states:

... the general rule appears to be that the judge may with propriety, at least where he uses well-guarded language and does not overemphasize the importance of agreement, advise the jurors concerning the desirability of reaching a verdict and that it is their duty to confer together and make an honest effort to agree upon a verdict and decide the case if they can conscientiously do so, and he may mention such matters as the expense of the trial, the time taken to try and determine the case, the trouble and inconvenience involved, and the fact that in the event of a mistrial the case probably will have to be tried again on the same evidence before another jury of equal capacity. (footnote omitted) 93 A.L. R.2d 627-718 (1964) at 671-72.