CHEHARDY, Chief Judge.
Defendant, Roosevelt Hall, appeals his conviction by a jury of second degree murder, a violation of LSA-R.S. 14:30.1. Following the trial and verdict, Hall was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
On appeal defendant first asserts the trial judge erred in denying his objection to the testimony of a police officer during which defendant alleges the officer improperly expressed an opinion on the credibility of the State’s key witness. Defendant alleges next that the trial judge erred in overruling his objection to the State’s repeated reference to his post-arrest silence. Third, defendant contends the verdict was contrary to the law and evidence.
The uncontested facts reveal that on February 25, 1987 Van Washington died of knife wounds to the chest area. His body was found in an alley alongside the Imperial House in Metairie, Louisiana. Upon investigation it was discovered Washington spent the day he died in the company of Kenneth Lawrence, a friend of 15 years, and defendant, an acquaintance of several years. When questioned by police officers, Lawrence accused defendant of the stabbing, asserting he was an eyewitness to the stabbing which took place in his home. At trial defendant accused Lawrence of the crime. Lawrence and defendant’s version *275 of the events leading up to the crime varied in some respects and coincided in others.
According to Lawrence, defendant drove to Kenner, Louisiana, from Baton Rouge, Louisiana, in a stolen car. Lawrence stated defendant met him at a convenience store near Lawrence’s home. From there, the two proceeded to the home of O’Dell Wells’ mother where they met with the victim. Lawrence testified they remained there for a while drinking beer and then the trio went back to the store to purchase beer and wine. Around noon, Lawrence asserted they went to his house in order for the victim to cut Lawrence’s hair. After the haircut was finished, they continued to drink and eventually returned to the store for more beer and wine. After returning to his house, Lawrence stated the three of them sat around drinking. At some point thereafter, Lawrence contended he heard defendant and Washington arguing and he saw defendant stab Washington with a kitchen knife. Lawrence stated he told defendant to get Washington to a hospital since Washington was still alive. He testified he was going to go with defendant, but that after he and defendant put Washington in the car, defendant drove off without him. Lawrence stated he returned to the house, cleaned the blood from the floor and knife, and did not take any further action. Lawrence testified he found out a few days later that Washington had died, but did not report these events until questioned by the police some time later.
Defendant stated he stole a car in Baton Rouge and drove it to Kenner where he met the victim, Lawrence and O’Dell at the local convenience store near Lawrence’s house. He said he followed Lawrence, Washington and O’Dell to O’Dell’s house where the group drank beer. Defendant testified that later the four of them went back to the store for beer and to pick up something for O’Dell’s father. After returning to O’Dell’s, he, Washington and Lawrence decided to take a ride. After purchasing more beer, the trio proceeded to the lakefront where they drove around awhile. Defendant contended the trio returned to Kenner after again purchasing beer and a bottle of rum. From the store, defendant asserts they then went to Washington’s sister’s house, where they picked up the clippers to cut Lawrence’s hair and then returned to Lawrence’s house.
While Washington was cutting Lawrence’s hair, defendant claimed he went for a ride. After the haircut was finished, defendant stated the three of them returned the “scissors”, after which he, Washington and Lawrence went back to Lawrence’s house to pick up the rest of the beer. Lawrence contended he waited outside in the car, but when the others did not come out of the house he went in, at which time defendant said he heard Washington and Lawrence arguing over drugs. He stated he went into the bathroom and that when he came out, he saw Lawrence stab Washington. Defendant asserted that Washington was still alive and Lawrence asked him to take Washington to the hospital. According to defendant, he and Lawrence carried Washington to the car and at that time Lawrence indicated he did not want to go to the hospital, so defendant drove away intending to take Washington to East Jefferson Hospital. Along the way, defendant stated he decided to stop to check the victim’s pulse. When he found no pulse, defendant continued on his way to the hospital, but eventually got lost. He stated that as he was driving he realized he was driving a stolen car with a dead body in it. Because of that, he testified, he took the body to the alley alongside the Imperial House and left it lying on the ground. After disposing of the body, defendant stated he returned to Baton Rouge.
In defendant’s first assignment of error he contends the trial judge erred in denying his objection to the investigating police officer’s expression of opinion on the credibility of the State’s eyewitness. The testimony complained of was given by Officer Steve Buras, who questioned Kenneth Lawrence and received the statement from him accusing defendant of the stabbing death of Washington. On direct examination, the following exchange took place concerning Lawrence’s assertion:
“Q. Officer, in the whole course of this investigation from February 25th until *276 today, I want you to consider your whole report, all of the evidence, all of the exhibits, all of the statements, have you found any piece of evidence to be inconsistent with Kenneth Lawrence’s story?
MR. JOHNSON:
Objection your Honor it calls for speculation.
MR. BODENHEIMER:
Your Honor, that’s not speculation. If it’s anything that contradicts that witness at all, I want to know about it. MR. JOHNSON:
He cannot make a decision as to what is consistent or inconsistent. That’s for the jury to decide. It’s the jury’s province and the court’s province.
THE COURT:
I think perhaps Mr. Johnson is correct in using the term inconsistent. If you want to rephrase it, contradicts, that’s a different story.
BY MR. BODENHEIMER:
Q. Alright, I’ll ask it that way using all of the evidence you’ve gathered, all of the statements, all of the physical findings, all of the scientific findings since the time you were involved in the case on February 25th until today, have you ever found one piece of evidence contradictory to the story that Kenneth Lawrence gave you?
MR. JOHNSON:
Same objection. In addition to that, he’s leading the witness. It still invades the province of what the jury is suppose to have sole possession, to determine whether there are contradictions, inconsistencies, inaccuracies or mistakes. That’s for the jury to determine if that evidence shows that.
MR. BODENHEIMER:
But the officer can certainly testify through his knowledge whether there are any contradictions, what he knows about the whole investigation.
THE COURT:
I’m going to allow that. I’ll note your objection.
MR. JOHNSON:
Thank you.
A. None whatsoever to my knowledge.
BY MR. BODENHEIMER:
Q. No contradictions whatsoever?
A. No sir.”
A lay witness can only testify to the facts within his knowledge, and is prohibited from expressing an opinion or testifying to his impressions. LSA-R.S. 15:463; State v. Alexander, 430 So.2d 621 (La. 1983). A witness is permitted, however, to draw, and testify to, reasonable inferences from his personal observation. State v. Alexander, supra; State v. Sayles, 395 So. 2d 695 (La.1981). In discussing the prohibition against opinion evidence, the Louisiana Supreme Court has noted that “the opinion rule should not be applied so strictly as to exclude first-hand testimony that may be several inferences removed from raw sense perceptions, yet more helpful to the jury than mere recitation of such perceptions.” State v. Short, 368 So.2d 1078, 1081 (La. 1979).
In this case, the question presented to the officer was “using all of the evidence you’ve gathered, all the statements, all of the physical findings, all of the scientific findings * * * have you ever found one piece of evidence contradictory to the story that Kenneth Lawrence gave you?” The officer responded: “None whatsoever to my knowledge.” In our opinion the officer’s answer simply reflects a reasonable inference drawn from his personal observations. As the State points out, the officer did not state that Lawrence’s story was true, he simply stated that, to his knowledge based on the evidence he gathered and had access to, he found nothing to contradict Lawrence’s version of the events. ' Since the police officer’s statement does not constitute an impermissible opinion, we hold the trial court did not err in denying defendant’s objection to the testimony.
In defendant’s second assignment of error, he argues that the trial judge erred in denying his objection made to the State’s repeated references to his post-arrest silence, citing Doyle v. Ohio, 426 U.S. 610, 96 *277 S.Ct. 2240, 48 L.Ed.2d 91 (1976), and State v. Mattheson, 407 So.2d 1160 (La.1981). In this regard defendant points to the State’s direct examination of Officer Buras as follows:
“BY MR. BODENHEIMER:
Q. Detective Buras, we did talk earlier about you coming into custody of defendant after his arrest, did we not?
A. That’s correct.
Q. Now, tell us exactly what you did after placing him under arrest or while placing him under arrest?
A. Well, he was physically under arrest already. I advised him of his rights orally and advised him of the charges against him in the warrant.
Q. Then what happened? Tell us in your own words.
A. He advised me that he didn’t no [sic] anything about any murder and he wanted to seek the advice of an attorney before he answered any more questions.
Q. Then what did you do at that point?
A. Stop talking to him, just fill the paper work out and had him transported to the lock up on Metairie Road, booked him.
Q. You didn’t ask him anymore after that?
A. You can’t once he says he wants an attorney, you have to shut up.
Q. So you asked him no more questions once he did that?
A. That’s correct.
Q. Exactly Officer and of course you’ve been through the Police Academy, have you not?
A. Yes sir.
Q. Trained in taking statements and reports?
A. That’s correct.
Q. What exactly did he say, his exact words?
A. His exact words were I don’t know anything about any murder and I want to speak to an attorney before I answer any more questions.
Q. You made a note of that?
A. I made notes. I don’t know if I have it verbatim.
Q. Now, Officer are you positive he didn’t state to you I don’t know nothing about me being involved in a murder?
A. He didn’t tell me that.
Q. Well, had he made a statement like that, what would your next question have been?
MR. JOHNSON:
Objection, speculation your Honor.
BY MR. BODENHEIMER:
Q. Alright. Normal course of investigation Officer if that question was told to you, what would your next question be?
MR. JOHNSON:
Same objection.
THE COURT:
Overruled.
A. The question would be well, what murder do you you know about. There’s not too many people go through life with more than one murder in that [sic] background. I’d naturally ask him who did the murder or who was involved if you’re not involved in it.
BY MR. BODENHEIMER:
Q. You never asked him anything like that?
A. No sir; I did not.
Q. Would you have talked him into taking a statement if you could?
MR. JOHNSON:
Objection, speculation.
MR. BODENHEIMER:
He opened the door when he asked the defendant on the stand if any questions were asked. I’d like to show why not.
MR. JOHNSON:
If the Court recalls I withdrew the question and rephrased it. I don’t think it’s responsive to any other question.
BY MR. BODENHEIMER:
Q. Let me rephrase and ask it this way. Why were no other questions put to him?
*278 A. Because he invoked the Miranda, he wanted an attorney.
Q. Did you have questions that you were prepared to ask him?
A. A lot.
MR. BODENHEIMER:
Thank you. No other questions.”
Initially we note that the grounds for defendant’s objection to the exchange at trial was that the testimony was speculative. At no time did he object on the basis that the questioning violated the prohibition in Doyle v. Ohio, supra, which holds that the state may not use for impeachment purposes, evidence of an accused’s post-arrest and post-Miranda warnings silence. (See Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Under LSA-C.Cr.P. art. 841 and the jurisprudence, a new basis for an objection cannot be raised for the first time on appeal. State v. Feeback, 414 So.2d 1229 (La.1982). In any event, the references herein to defendant’s post-arrest silence were indirectly elicited as a result of the State’s attempt to impeach a statement made by defendant prior to defendant’s invoking his Miranda rights. Similar to the court’s opinion in State v. Mosley, 390 So.2d 1302 (La.1980), we do not approve of the prosecutor’s behavior in questioning the police officer in such a manner as to allow defendant’s post-arrest silence to come to the attention of the jury. However, we find, as did the court in Mosley, supra, that the reference was “oblique and obscure” and does not amount to reversible error.
Defendant’s final assignment of error complains that the verdict was contrary to the law and evidence. More particularly, defendant contends the State’s sole direct evidence was supplied by Kenneth Lawrence, who admitted the stabbing took place in his home, that the knife belonged to him, and that he did not report the matter or speak to the police until nine days after the fact. Defendant argues that because of these facts, no rational trier of fact could have believed this witness beyond a reasonable doubt.
The proper standard of appellate review in assessing the sufficiency of the evidence is whether viewing the evidence in the light most favorable to the prosecution any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986); State v. Williams, 470 So.2d 356 (La.App. 5th Cir.1985). In this case defendant was convicted of second degree murder in violation of LSA-R.S. 14:30.1, which states in pertinent part:
“Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm * *
The evidence presented by the State included the testimony of Lawrence, of the defendant, of a forensic expert, of the crime scene officer and of the investigating officer. A witness was also brought to testify to the fact that defendant was wearing a shirt on the day of the murder which was later found in the trunk of the stolen vehicle.
The evidence was uncontested that the stabbing occurred in Lawrence’s house with his knife and that defendant disposed of the body. Because the physical evidence (consisting of blood samples taken from the house, the knife, the clothes of the victim and the shirt found in the trunk of the stolen vehicle) was inconclusive, the determination of defendant’s guilt depended upon the credibility of Lawrence, who was, in turn, accused by defendant of committing the crime. Such credibility determinations are not subject to appellate review beyond a sufficiency evaluation under the Jackson standard. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Williams, supra.
Buttressing Lawrence’s credibility is the fact that he, unlike defendant, had no criminal record, his testimony was straight forward and his story remained consistent from the time he gave the information to the police to the time of trial. Defendant, on the other hand, admitted without re *279 morse or justification that he regularly steals cars and that he had several convictions for car theft. His credibility may have been further impeached by his testimony regarding the sweatshirt found by the police in the car trunk. In that regard, Joann Magee, a witness, identified the shirt at trial as the one defendant was wearing on the day of the murder. Defendant admitted the shirt belonged to him, but unequivocally denied that he wore the shirt that day. He further testified he did not at any time open the trunk. Since he also testified he drove straight to Baton Rouge after disposing of the body, defendant’s testimony presents an unexplainable inconsistency which may have influenced the jury’s verdict. At any rate, after reviewing the testimony of defendant, Lawrence and Magee, along with the other evidence in the light most favorable to the prosecution, we conclude any rational trier of fact could have found defendant guilty beyond a reasonable doubt. Jackson v. Virginia, supra.
Finally we have reviewed the record for patent error under LSA-C.C.P. art. 930. A review of the case reflects no patent error.
Accordingly, the defendant’s conviction and sentence are hereby affirmed.
AFFIRMED.